## PETERS v. GRAHAM. (No. 1833.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 19, 1921. Rehearing Denied Nov. 23, 1921.)

1. **Landlord and tenant ⬅34(2)—That lessor inserted stipulations in lease not previously agreed upon held not to warrant cancellation.**

Court having found that lessee understood the nature and effect of the execution of the lease at the time he signed lease, and that no undue influence was exercised by lessor to obtain his signature, was not warranted in canceling lease on the ground of fraud, on finding that lessor inserted stipulations in the lease not previously agreed upon, in the absence of allegations that the lease was not correctly read to lessee, or that its contents were fraudulently misstated, and that without negligence or fault on his part he was induced to sign it.

2. **Appeal and error ⬅217, 242(1)—Misconduct of jury not considered unless first presented to and acted upon by trial court.**

Matters relating to misconduct of the jury must be presented to and acted on by the trial court before they can be considered on appeal.

3. **Trial ⬅219—Court required to define technical terms used in charge.**

It is the trial court's duty to define technical terms used in his charge.

Appeal from Roberts County Court; J. K. McKenzie, Judge.

Action by D. W. Graham against E. Peters. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Coffee & Holmes, of Miami, for appellant.
Hoover, Hoover & Willis, of Canadian, for appellee.

HALL, J. This action grows out of a contract whereby appellant leased to appellee certain lands in Roberts county. Appellee filed suit, alleging: That the parties verbally negotiated for a lease of the premises for the crop year of 1920, and before the contract was reduced to writing plaintiff became seriously ill with influenza, and finally lapsed into a state of delirium. While in this condition and mentally incapacitated appellant came to his bedside, and persuaded a cousin of appellee to act in appellee's stead in arranging the details of the written contract. That while he was insane with fever the contract was procured by fraud and undue influence, and failed to express the previous understanding between the parties. That appellee has, since executing the writing, been informed that at the time he signed it, it was stated by appellant that appellee could have his choice of two feedstacks that were on the place, one at $400 and the other at

$500, both stacks being represented by defendant as in good condition. That $50 should be deducted from the purchase price thereof in consideration of certain work, repairing fences, etc., to be done by appellee. That at the time of signing the written lease the appellant procured from plaintiff a check for $200, one note for $150, and another for $250, the purpose of said notes being that one of them should be retained by defendant, in accordance with which of the stacks of feed appellee decided to purchase, the other to be returned to appellee. Appellee further alleged that when he recovered sufficiently to realize what had been done he at once repudiated the transaction; that he never made a choice of the stacks of feed, nor in any wise attempted to perform the illegal contract. He prayed that appellant be required to bring the notes into court for cancellation, that the lease be in all things rescinded, and that he recover of defendant the sum of $200, paid on feed when the lease was executed, with 6 per cent. interest from February 4, 1920, or, in the alternative, that he have judgment for the face value of the notes, together with said $200 as damages. The appellant answered by general denial and cross-action, alleging that the lease dated February 14, 1920, was in all things agreed to except the provision requiring that one-third of the oats as rent be delivered in the market. That this was corrected by verbal agreement, providing that the rent oats should be delivered in the granary on the place. That the contract provided for the lease of all of section No. 48. That 440 acres in cultivation should be planted by appellee as follows: About 50 acres in oats or barley, and the remainder in kaffir corn, maize, or cane at appellee's option. It further provided that appellee should pay $100 per year for the 200 acres of pasturage, for which his note was executed; that appellant should have one-third of the row crops, oats and barley, delivered on the place; that at the time the land was leased appellee agreed, in consideration of certain feed then on the place, in two different ricks, that he would purchase one of said ricks for $500, or the other for $400, and pay $200 in cash, executing his two notes, one for $150 and the other for $250, respectively, representing the balance of the purchase money which should become due for the rick which he might subsequently decide to use; that the $50 deduction above mentioned, for work, was made at the time of the execution of the notes; that said notes were placed with J. A. Holmes, to be held by him until appellee made selection, when the note representing the rick of feed so selected was to be delivered to appellant and the other returned to appellee; that in pursuance of said agreement plaintiff select-

ed the rick represented by the $250 note. Appellant prayed for judgment for said note, and tendered the feed. He prayed in the alternative for $200 damages for the difference in the contract price of the feed and its actual value at the time of the trial. He also prayed for damages for breach of rental contract, alleging that if appellee had complied therewith and cultivated the land he would have raised about $800 worth of oats or barley, feedstuffs of the value of about $1,600; one-third of which would have belonged to appellant. He also pleaded estoppel and ratification of the original lease. The case was submitted to a jury upon special issues, resulting in a judgment that appellant take nothing by his cross-action, that appellee recover of appellant the sum of $190, and decreeing the cancellation of the lease and notes.

The jury found in substance the following facts: (1) That appellee's mind was not impaired by sickness at the time he signed the written lease, notes, and check to such an extent that he did not understand the nature and effect of the transaction; (2) that appellant did not, when the contract, notes, and check were signed, unduly influence appellee; (3) that the stacks of feed, which were subject-matter of the trade between the parties, and for which the notes was given, were at that time rotten and worthless; (4) that appellant fraudulently caused provisions to be inserted in the written contract that had not previously been agreed upon verbally between the parties; (5) that prior to February 14, 1920, the parties had discussed the matter, and appellee knew upon what terms and conditions he could lease the property; (6) that appellee purchased from appellant a portion of the feed located on the place at the time of the lease for $500; and (7) that the difference in the value of said feed at the time of its purchase and at the time of the trial was $200.

The judgment rendered by the court is in part as follows:

"And from said issues the court, on the 14th day of January, 1921, having determined that the contract was without consideration as to the notes that were given for feedstuff, and, further, that the contract as an entirety was obtained by fraud, as found by the jury, which vitiated the entire contract, and that the said contract should therefore be avoided, it is therefore ordered, adjudged, and decreed by the court that the contract be held void, and that the other issues as to damages should be held immaterial, and should be resolved against the defendant by reason of said finding of fraud, and that the plaintiff, D. W. Graham, recover of and from the defendant, E. Peters, the sum of $200, less $10 for value admitted for feed taken for sample, making the sum of $190, with interest thereon from February 4, 1920, at the legal rate of 6 per cent. per

annum, and all costs on this behalf expended," etc.

Under the various assignments contention is made that the findings are conflicting, and that, taken as a whole, they do not support the judgment. It will be noticed that the finding which we have numbered 3 above is that the stacks of feed were rotten and worthless, yet in finding No. 7 the difference in the value of the feed at the time of its purchase and at the time of the trial is fixed at $200. If not conflicting, this is, to say the least, confusing, and the court must necessarily ignore the seventh finding, which is in effect that the stack of feed was worth $300, in order to justify the judgment that appellant take nothing.

[1-3] Findings numbered 1 and 2 are to the effect that appellee understood the nature and effect of the transaction when he signed the several instruments, and that no undue influence was exercised by appellant to obtain his signature. This would relieve the appellant of all charge of fraud in obtaining appellee's signature by reason of his enfeebled mental condition. The fourth finding, to the effect that appellant fraudulently inserted stipulations in the lease not previously agreed upon, would not justify the court in canceling the contract if appellee, at the time of its execution; was capable of understanding its terms. Appellee does not charge that the contract was not correctly read to him, or that its contents were fraudulently misstated, and that without negligence or fault on his part he was induced to sign it. If, as found by the jury, his mind was not affected and no fraud or concealment was resorted to in order to obtain his signature, the mere fact that provisions were inserted in the contract contrary to their previous verbal understanding would not, under the pleadings, entitle him to have the contract canceled. The fourth finding of the jury did not authorize the court to declare the contract void upon the ground of fraud, since no other allegation of fraud is made than the procurement of appellee's signature while, as alleged, he was mentally unfit. We think the assignments relating to this feature of the case should be sustained and the judgment reversed. The affidavits of the jurors attached to the motion for new trial and as shown by the record, urged for the first time in this court, cannot be considered. Matters relating to the misconduct of the jury must be presented to and acted upon by the trial court before they can be considered here. It is the duty of the trial judge to define technical terms used in his charge.

For the reasons pointed out the judgment is reversed, and the cause remanded.